TERRI KEYSER-COOPER
Law Office of Terri Keyser-Cooper
Nevada Bar No. 3984
3590 Barrymore Dr.
Reno, NV 89512
(775) 337-0323
*Attorney for Plaintiff Shannon Branson*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SHANNON T. BRANSON

    Plaintiff,

vs.

WALGREEN CO.

    Defendant.

_____/

Case No. 3:15-cv-00203-LRH-WCG

**MOTION TO COMPEL DISCOVERY WITHOUT THE NEED FOR A PROTECTIVE ORDER**

## I.    THERE IS NO COMPELLING REASON FOR A PROTECTIVE ORDER

Plaintiff has requested certain documents from Defendant, over a period of many months, and Defendant has asserted it will not provide the documents until and unless a protective order is approved by the Court.[1] The reason for the protective order is for Defendant to have the ability to seal documents at depositions, at dispositive motions, and at trial. The process Defendant insists upon

---

[1] When this issue of the protective order first arose, Plaintiff signed the agreement proposed by Defendant to move the case along and to obtain the needed documents. On September 21, 2015, the protective order was filed with the Court. (ECF No. 25). On September 22, 2015, the Court rejected the proposed protective order to comply with Local Rules and *Kamakana.* (ECF No. 26). Since that time, and after opportunity to review the extensive case law on protective orders following *Kamakana*, Plaintiff's counsel has come to the conclusion that no protective order is necessary as no trade secrets, research, development, or commercial information are requested and all personal information may be easily redacted without the need for a protective order.

1    would be burdensome, cumbersome, and unwieldly and would make it extremely difficult for Plaintiff

2    to use the documents. This is precisely the reason Defendant seeks the protective order.

3         Extensive delays have occurred because the parties previously engaged in two ENE

4    conferences. The delay was necessitated by the need for Medicare to weigh in on what recovery, if

5    any, it would demand, for Plaintiff's very significant medical bills.[2] Plaintiff claims his complete

6    physical collapse following his termination was related to, and caused by, the shock and devastation

7    of the termination. See Exhibit 1, Declaration of Gary Ridenour, M.D. Settlement negotiations

8
9    collapsed primarily because the parties have radically different views of the case.

10        Nevertheless, the parties have engaged in written discovery.[3] Disputes have arisen regarding

11   Plaintiff's inability to begin the deposition process. Plaintiff has been attempting to take depositions

12   for months, asking almost every week since February 16, 2016 (the conclusion of the last ENE), for

13   the depositions to begin with Defendant insisting the depositions take place in late June, 2016.

14
15   Plaintiff has been hobbled by Defendant's intransigence in beginning the deposition process and

16   further stymied by Defendant refusal to provide documents unless Plaintiff agreed to sign a

17   burdensome and cumbersome protective order.[4] Just recently, as of April 27, 2016, Defendant finally,

18   and for the first time, agreed to begin the deposition process in May, 2016. In order to have effective

19

20        [2] Medicare took months to issue its decision, and when it did, it reached three separate
21   conclusions one week apart, necessitating further calls to Medicare and much additional discussion.

22        [3] Written discovery has been ongoing. Plaintiff has propounded Initial Disclosures and filed
23   Second and Third Supplemental Disclosures. Plaintiff has propounded a First and Second Set of
     Interrogatories, a First and Second Set of Requests for Production of Documents, and a Set of
24   Requests for Admission. Defendant has propounded its Initial Disclosures and Supplemented its
     Disclosures. Defendant has also filed a set of Interrogatories and Requests For Production of
25   Documents and taken Plaintiff's deposition.

26        [4] All of Plaintiff's depositions involve Walgreen employees. Plaintiff cannot take the
     deposition without Walgreens producing these employees and Walgreens, until recently, refused to
27   produce the employees for deposition.

28
                                                                                                    2

1  depositions the documents must be obtained, accordingly the Court must resolve this discovery

2  dispute as the parties have been unable to reach agreement.

3  **A. _Kamakana_ Changed the Landscape on Protective Orders**

4  _Kamakana v. City and County of Honolulu,_ 447 F.3d 1184 (9th Cir. 2006) radically changed

5  the need for protective orders, especially in employment cases. In the past, defendants could simply

6  assert that certain documents were privileged or confidential and demand a protective order.

7  _Kamakana_ changed that: "Simply mentioning a general category of privilege, without any further

8  elaboration or any specific linkage with the documents does not satisfy the burden." _Kamakana,_ 447

9  F.3d 1172, 1184 (9th Cir. 2006). Plaintiff seeks employment records from Defendant. In a "meet and

10  confer" letter, Plaintiff's counsel Terri Keyser-Cooper wrote Defendant's counsel Molly Rezac, that

11  Walgreen's definition of "confidential" gave Walgreens the blanket ability to claim whatever it

12  wanted to be "confidential" and then delineate a complex process to use the purported confidential

13  documents. Ms. Keyser-Cooper objected to the protective order because it would do precisely what

14  _Kamakana_ seeks to avoid. Defendant's definition of "confidential" is as follows:

15

16  "Confidential Information" shall be defined as such documents, deposition testimony
   or other information disclosed during discovery in this Action which the Producing
17  Party or another Party reasonably and in good faith contends contains information that
   should be protected from disclosure pursuant to this Protective Order. Any Party may
18  designate any information or documents as Confidential in the reasonable exercise of
   such Party's sole discretion; provided, however, by agreeing to this Protective Order,
19  no Party waives the right to challenge any other Party's designation of any information
   or document as Confidential.
20
21  See Exhibit 2, Walgreens' proposed protective order.

22  Ms. Keyser-Cooper wrote Ms. Rezac on April 17, 2016 stating: "Blanket protective orders,

23  which you are desiring, are genuinely called for only in extremely limited circumstances. This is

24  because they present a great potential for abuse and can be a powerful means of maintaining and

25  enforcing secrecy. It is the court's obligation – and not just the parties' – to scrutinize every request

26  for a protective order, and to enter them only after very careful, particularized review. See _AGA_

27  _Shareholders, LLC v. CSK Auto, Inc.,_ No. CV-07-62-PHX-DGC, 2007 WL 4225450 at *1 (D. Ariz.

28

Nov. 28, 2007) (denying stipulated protective order and citing need for particularized showing)." (See Exhibit 3, Letter of Keyser-Cooper to Rezac).

Defendants in general inevitably want a very broad definition of what is deemed "confidential information" and until *Kamakana*, defendants got away with it. Defendants generally have the overwhelming bulk of documents plaintiffs require to litigate an employment case. Keyser-Cooper wrote: "It is very easy to over-reach and if I accepted your protective order I would be relying on your good faith in designating appropriate documents as confidential without any evidence or proof that such documents actually meet the test for confidentiality. This I cannot do." (Exhibit 3, page 2). Ms. Rezac responded by asserting, without specificity: "Walgreens is entitled to a protective order providing that confidential information disclosed in this case will not be disclosed outside this litigation." (Exhibit 4, Letter of Rezac to Keyser-Cooper, page 2). Ms. Rezac insists that Plaintiff seeks personal, private information and ignores Ms. Keyser-Cooper's assertion that such personal and private information may easily be redacted.

## 1. *Kamakana* Limits What Can Be Defined As Confidential

According to *Kamakana*, the definition of what may be designated as "confidential" should be as objective as possible and bounded by authority wherever possible. For example, a good definition of "confidential" might refer to state or federal trade secret definitions. It might include personal private information or personal identifying information as this type of information is typically protected by state and federal privacy laws. Ms. Keyser-Cooper explained to Ms. Rezac that she had "no problem" with Walgreens' redacting all personal information from the personnel files requested, anything related to a private address, phone number, social security number, or medical records. (Exhibit 3, page 2). Ms. Keyser-Cooper explained to Ms. Rezac that a protective order was not be necessary to do that.

Further, Ms. Keyser-Cooper wrote: "If you are claiming embarrassment as a reason for a protective order, the impact must be demonstrated to be particularly serious – such that it would cause significant harm to a company's competitive and financial position. Merely embarrassing information

4

that details corporate mismanagement or the injuries occurring from a faulty product is not entitled to protection. *Kamakana,* 447 F.3d at 1179. ("[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").

Defendant wants carte blanche to declare whatever it wants "confidential" based on its own definition of confidentiality, subject to the limitation of "good faith." The burden of showing good cause is on the party seeking to keep the information and/or documents confidential. *Kamakana,* 447 F.3d 1172 at 1176. For example, trade secrets , as set forth in the Uniform Trade Secrets Act, meaning information, including a formula, pattern, compilation, program, device, method, technique, or process that has independent economic value, are generally confidential. If protection was not accorded for trade secrets, other persons would be able to unlawfully obtain economic value from the disclosure. Here, Plaintiff seeks no trade secrets.

Similarly, research, development, or commercial information that is of a highly competitively sensitive nature, is also generally confidential. Such information would likely cause proprietary, competitive, or economic harm if released without protection. Likewise, some personal information must protected from disclosure under state or federal law, or where disclosure of that information would be highly offensive to a legitimate public concern. Plaintiff seeks no research, development, or commercial information.

## 2. The Public Has the Right to Access of Judicial Records

Historically, courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 & n. 7, (1978). This right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Id.* at 598. Such vigilance is aided by the efforts of newspapers to "publish information concerning the operation of government." *Id.* Nonetheless, access to judicial records is not absolute. A narrow range of documents is not subject to the right of public access at all

because the records have "traditionally been kept secret for important policy reasons. *Kamakana*, 447 F.3d 1172 at 1178.

### 3.  <u>Sealing Public Documents is Subject to the Compelling Reason Standard</u>

Unless a particular court record is one "traditionally kept secret," a "strong presumption in favor of access" is the starting point. *Id. (*citing *Foltz v. State Fam Mutual Auto. Insurance Company,* 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. *Kamakana*, 447 F.3d 1172 at 1178. "That is, the party must 'articulate[] compelling reasons supported by specific factual findings,'" *Id. Kamakana*, at 1178 (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct,,* 187 F.3d 1096, 1102-03 (9th Cir. 1999)), that outweigh the general history of access and the public policies favoring disclosure, such as "'public interest in understanding the judicial process.'" *Kamakana*, at 1178-79 (citing *EEOC v. Erection Co.,* 900 F.2d 168, 170 (9th Cir. 1990)). In sum, the court must "conscientiously balance [] the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz,* 331 F.3d at 1135. After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Kamakana*, at 1179.

Here, Defendant seeks to have the protective order in place so that, among other reasons, documents must be filed under seal in dispositive motions. Courts have held that "compelling reasons" must be shown to seal judicial records attached to a dispositive motion. *Kamakana*, at 1179 (citing *Foltz,* 331 F.3d at 1136). The "compelling reasons" standard is invoked even if the dispositive motion, or its attachments, were previously filed under seal or protective order. *Id.* ("[T]he presumption of access is not rebutted where... documents subject to a protective order are filed under seal as attached to a dispositive motion. The . . . 'compelling reasons' standard continues to apply.")

The court in *Kamakana* opined on the differences between documents to be produced in discovery and documents that to be filed in a dispositive motion, because the rational is not identical. Here, Defendant wants to have discovery documents produced under seal and the same documents

filed under seal in dispositive motions, at trial, and during depositions. Defendant has failed to produce a compelling reason, or any reason whatsoever, for anything requested to be confidential. There is no issue of trade secrets or proprietary information. There is no issue of items traditionally kept confidential. The only possible issues which could necessitate a confidentiality concern would be the private addresses, private phone numbers, social security numbers, and medical records. These items are not wanted and are not sought. These items can easily be redacted.

## III.   WIDE DISCOVERY IS NECESSARY IN EMPLOYMENT CASES

Throughout the Federal Rules of Civil Procedure generally and their application to Title IVV specifically, a constant theme is that the plaintiff has a right to broad discovery. Judge Charles Richey has explained this judicial policy in writing for the Federal Judicial Center, speaking of the "general rule":

> Plaintiffs should be permitted a very broad scope of discovery in Title VII cases, even in individual employee cases. Since direct evidence of discrimination is rarely obtainable, plaintiffs must rely on circumstantial evidence and statistical data, and evidence of an employer's overall employment practices may be essential to plaintiff's prima facie case. Richey, *Manual on Employment Discrimination Law and Civil Rights Actions in Federal Courts 23* (Federal Judicial Ctr. 1986).

In employment litigation, the invocation of privilege of confidentiality tends to impede the plaintiff more than the defendant. Most of the relevant documents to be discovered lie with the defendant. It is improbable that the plaintiff would have similar opportunities to impede the discovery sought by the employer even if so motivated. In general, parties seeking to invoke privilege must do so with specificity. If they fail to do so, the privilege is waived. The invoking party must "present the underlying circumstances or facts demonstrating the existence of the privilege. An article commented in discussing the invocation of confidentiality, "[I]t is axiomatic that a party objecting to pre-trial discovery has the burden of proving that the data sought are objectionable." Coben, *Overcoming Objections to Discovery: Countering Attorney-Client and Work-Product Arguments.* Trial, July, 1992, at 61. The party seeking confidentiality should identify each document, provide a factual summary of its contents, and provide the specific justification for its being withheld. *Pete Renaldi's Fast Foods, Inc. v. Great Am. Ins. Co.,* 123 F.R.D. 198 (M.D.N.C. 1988).

Federal appellate courts have expressed hostility to umbrella protection orders similar to the one insisted upon by Defendant. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 785 (3rd Cir. 1994). In *Jepson v. Makita Electric Works, Ltd.,* 30 F.3d 854, 858-59 (7th Cir. 1994), the court overturned an umbrella order and ordered the release of deposition materials previously designated "confidential" because the magistrate judge did not independently evaluate whether 'good cause' existed. In an article by Allen and Seckel of Carlton, Fields in Tampa, *"Umbrella Protective Orders under Rule 26 (c) and the 'Good Cause Trap' for the Unwary Litigator,"* the authors noted that "[i]ncreasing judicial hostility toward stipulated umbrella protective orders may represent the wave of the future," and they noted that there had been a "change in the judicial climate towards umbrella protective orders." *Comm. On Pretrial Prac. & Discovery No. 4 (*ABA, Section of Litig. Fall 1996).

## IV.    SPECIFIC DOCUMENTS SOUGHT AND WITHHELD

### A.  Plaintiff's Requests For Production of Documents (See Exhibit 5)

#### Request For Production No. 4:

The official personal file of "Angelique" former supervisor of the Walgreen's located in Fernley, Nevada during the time plaintiff was employed.

a.  Performance evaluations

b.  Resume or C.V.

c.  Formal disciplinary action

d.  Informal disciplinary action

e.  Informal notes

f.  N/A

g.  Informal counseling memoranda

h.  Promotions, demotions, and transfers

i.  Earnings history

j.  Job descriptions

k.  Contract for employment

l.  Employment application

m. Attendance records and leaves of absence

n.  Grievances

o.  Discrimination charges

p.  Awards, prizes, commendations, or memoranda regarding outstanding performance as noted by managers, supervisors, co-employee's or citizens.

See Exhibit 5, 4:8-27.

**Request for Production No. 5:**

The official personal file of Ludwig Joseph, including but not limited to:

a.  Performance evaluations

b.  Resume or C.V

c.  Formal disciplinary action

d.  Informal disciplinary action

e.  Informal notes

f.  N/A

g.  Informal counseling memoranda

h.  Promotions, demotions, and transfers

i.  Earnings history

j.  Job descriptions

k.  Contract for employment

l.  Employment application

m. Attendance records and leaves of absence

n.  Grievances

o.  Discrimination charges

p.  Awards, prizes, commendations, or memoranda regarding outstanding performance as noted by managers, supervisors, co-employee's or citizens.

See Exhibit 5, 5:8-25.

### Request for Production No. 12:

All documents that reflect complaints made by any customer at any time that plaintiff failed to provide to the customer items the customer had paid for. (Exhibit 5, 8:3-5).

### Request for Production No. 26:

All emails, correspondence, or documents from any customer of and concerning plaintiff. (Exhibit 5, 13:24-25).

### Request for Production No. 28:

A list of all employees and supervisors who have received discipline in the past five years for failing to provide a customer with an item the customer had purchased. (Exhibit 5, 14:15-17).

### Request for Production No. 29:

The complete record of training received by Ludwig Joseph on discrimination against the disabled. (Exhibit 5, 14:23-25).

**B. Defendant's Responses to Request for Production**

**Request No. 4 and 5:** Defendant objects to this request to the extent it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is beyond the scope of permissible discovery. Subject to and without waiving said objections, Defendant responds that it will produce responsive documents upon the entry of an appropriate protective order. (Exhibit 4, 5:1-7 and 6:1-7).

**Request No. 12:** Defendant objects to this request to the extent it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, is beyond the scope of permissible discovery, and not limited as to time. Subject to and without waiving said objections, Defendant responds: *See* Walgreen 0000335; Walgreen 000348. (Exhibit 5, 8:6-10).

**Request No. 26:** Defendant objects to this request to the extent it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, is beyond the scope of permissible discovery, and not limited as to time. Subject to and without waiving said objections, Defendant responds: *See* Walgreen 0000335; Walgreen 000335. (Exhibit 5, 14:1-5).

**Request No. 28:** Defendant objects to this request to the extent it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, is beyond the scope of permissible discovery. Subject to and without waiving said objections, Defendant responds that it will produce responsive documents upon the entry of an appropriate protective order.  (Exhibit 5,14:18-22).

**Request No. 29:** Defendant objects to this request to the extent it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, is beyond the scope of permissible discovery. Subject to and without waiving said objections, Defendant responds that it will produce responsive documents upon the entry of an appropriate protective order.  (Exhibit 5,15:1-5).

C.    **Plaintiff's Argument in Favor of Production**

**RFP 4 and 5** – This request seeks the personnel records of the managers at the Fernley Walgreens. There is no compelling need for the personnel records of Walgreen Managers Angelique Swinson and Ludwig Joseph to be confidential or subject to a protective order. The information sought may reveal whether the managers have been disciplined in the past or have management problems. These records may reveal a host of helpful information. The fact that to answer requests

1  for production might be burdensome or expensive is not a valid objection if the information sought is

2  relevant and material. Defendants routinely research a plaintiff in an employment case.

3      Without the personnel records Defendant has an unfair advantage. Defendant has access to

4  Plaintiff's application and other documents. For example, Defendants will examine a plaintiff's

5  application for employment and contact former employers to learn facts about the plaintiff in former

6  work environments. Plaintiff wants the identical information. Plaintiff wants to learn as much as he

7  can about the managers at Walgreens, especially Ludwig Joseph who terminated him. Plaintiff wants

8  to be able to contact the former employers of these Walgreens managers. Further, it may be that these

9  Walgreens managers are problem employees who have a pattern of bad conduct and/or poor

10  management. It may be that Ludwig Joseph has been disciplined in the past for a pattern and practice

11  of bad conduct. If Defendant continues to employee these managers after notice of problematic

12  employment practices it may be documented in their respective files and helpful to Plaintiff. In *Kelly*

13  *v. City of San Jose*, 114 F.R.D. 653, 447-68 (N.D. Ca. 1987), the court concluded that in the context

14  of civil rights cases plaintiff's may suffer great difficulties if courts impose demanding relevancy

15  standards on them because it is unlikely that plaintiff's would know the precise contents of personnel

16  files of managers and supervisors. Accordingly, the court suggested it would be sufficient for a

17  plaintiff to show how information is "of the kind" that is likely to be in the file and could lead to

18  admissible evidence such as credibility, notice and ratification.

19      Here, Plaintiff seeks to learn as much as he can about the managers at the store where he was

20  terminated. Their credibility is in issue. Their conduct with other employees in similar situations is in

21  issue. For all the reasons stated earlier, a protective order to obtain this information is not necessary.

22  There is no compelling need that such documents must be confidential. A general objection that

23  requests for admission are onerous and burdensome and require the party to make research and

24  compile data raises no issue. The objection must make a specific showing of reasons why the request

25  should not be answered. 4 James W. Moore et al., *Moore's Federal Practice,* paragraph 33.20 at 33-

26  100, 33-104 to 33-105 (2nd ed. 1993).

27

28

1      **RFP 12** – This request asked for all documents that reflect complaints made by any customer

2 at any time that Plaintiff failed to provide to the customer with items the customer paid for. This is

3 relevant to whether or not Plaintiff had a pattern and practice of deceptive practices at the cash

4 register. Plaintiff was terminated for a mistake he made, failing to adequately hear what a customer

5 said to him. He rang up a sale when the customer did not want the item. He understood that the

6 customer wanted to give him the item. This was something that regularly occurred to Plaintiff. (See

7 Exhibits 6, Declaration of Sandra Lee Alarcon, Dennis Cooper, and Maria Cooper). Plaintiff alleges

8 that miscommunications at the cash register are common and occur on a daily basis without

9 termination.

10      In this instance, Plaintiff could not personally or financially benefit in any way from ringing

11 up an item for a customer and failing to give the customer the item. A videotape shows Plaintiff

12 ringing up an item and then placing it back on the counter to be sold again. He understood the item

13 had been given to him, he did not want the item, and placed it back on the counter to be re-sold.

14 Defendant has provided the Affidavit of Kendra Sherwood who claims on one occasion Plaintiff sold

15 her a single bag of potato chips and failed to give her the chips. Plaintiff reasonably wants to know if

16 there are additional customers who claim Plaintiff failed to provide items to them. Defendant's canned

17 discovery response that this is "overly broad, unduly burdensome, and not reasonably calculated to

18 lead to admissible evidence" is ridiculous—as the request is very specific. This information is

19 particularly relevant because the sole reason for Plaintiff's termination was his failure to provide one

20 item, on one occasion, to a customer—if there are other customers who have made the same or similar

21 complains, it is vital to Plaintiff's case that such information be provided.

22      **RFP 26** – This request asked for all emails, correspondence, or documents from any customer

23 of and concerning plaintiff. Defendant responded, again, that this request is "overly broad, unduly

24 burdensome, and not reasonably calculated to lead to admissible evidence." This canned response is

25 without merit because this is the basis for Plaintiff's termination. It is absolutely relevant and very

26 specific.

27

28

**RFP 28 –** This request asked for a list of all employees and supervisors who have received discipline in the past five years for failing to provide a customer with an item the customer had purchased. Defendant responded by insisting this information would be available upon the entry of a protective order. There is no reason, compelling or otherwise, for this response to be premised on a protective order. This information is highly relevant to the issues at hand.

**RFP 29 –** This requests asks for the complete record of trainings received by Ludwig Joseph on discrimination against the disabled. It is relevant to the issues at hand because Plaintiff claims that Mr. Joseph discriminated against him based on his disability in many instances. What training Mr. Joseph received, or did not receive, will be helpful in evaluating the case.

V.   **CONCLUSION**

The meet and confer requirements are satisfied. The parties have engaged in substantial correspondence regarding the issuance of a protective order and whether or not the above items sought will be produced. Ms. Keyser-Cooper has written to Ms. Rezac extensively on the issue without the ability to obtain resolution. On October 1, 2015 Ms. Keyser-Cooper wrote Ms. Rezac about the identical issues. On October 9, 2015, Ms. Rezac responded. On April 17, 2016, Ms. Keyser-Cooper again wrote Ms. Rezac on the identical issues. (Exhibit 3). On April 26, 2016, Ms. Rezac responded. (Exhibit 4). On April 19, 2016, Ms. Keyser-Cooper informed Ms. Rezac that should the parties be unable to reach a resolution she would be drafting a motion to compel and a request for attorneys' fees pursuant to FRCP 37A (Exhibit 7).

For reasons stated, this motion should be granted.

DATED this 28 day of April, 2016

TERRI KEYSER-COOPER
*Attorney for Plaintiff Shannon Branson*

14

1 | TERRI KEYSER-COOPER
2 | Law Office of Terri Keyser-Cooper
  | Nevada Bar No. 3984
3 | 3590 Barrymore Dr.
  | Reno, NV 89512
4 | (775) 337-0323
  | *Attorney for Plaintiff Shannon Branson*
5

6

7 | **UNITED STATES DISTRICT COURT**

8 | **DISTRICT OF NEVADA**

9

10 | SHANNON T. BRANSON                    Case No. 3:15-cv-00203-LRH-WCG

11 |     Plaintiff,                       DECLARATION OF COUNSEL TERRI
                                          KEYSER-COOPER
12 |     vs.

13 | WALGREEN CO.
14 |         Defendant.
   | _____/

15

16 | I, TERRI KEYSER-COOPER, declare under penalty of perjury. the following assertions are

17 | true and correct and made with personal knowledge.

18 | 1. All of the representations made in this motion are made based on personal knowledge.

19 | 2. Attached to this motion are seven exhibits I have personally compiled. They consist of

20 | the following:

21 |     (a) Exhibit 1 is a true and accurate copy of a Declaration signed by Gary Ridenour,

22 |     M.D.

23 |     (b) Exhibit 2 is a true and accurate copy of a Protective Order drafted by Defendant.

24 |     (c) Exhibit 3 is a true and accurate copy of a letter I sent to Molly Rezac on April 17,

25 |     2016, regarding discovery issues.

26 |     (d) Exhibit 4 is a true and accurate copy of a letter sent to me by Molly Rezac on

27

28

1

April 26, 2016.

(e) Exhibit 5 is a true and accurate copy of Defendant's Response to Plaintiff's Request For Production of Documents – Set one which contains the requests made and the responses thereto.

(f) Exhibit 6 is a collection of three Declarations, signed by Sandra Lee Alarcon, Dennis Cooper and Maria Cooper.

(g) Exhibit 7 is a true and accurate copy of an email and letter I sent to Ms. Rezac.

DATED this 28 day of April, 2016

TERRI KEYSER-COOPER
*Attorney for Plaintiff*

2

1

2          **CERTIFICATE OF SERVICE**

3          I, Terri Keyser-Cooper, declare as follows:

4          I am over the age of 18 years and not a party to this action. My business address is 3590
Barrymore Dr., Reno, NV 89512.

5
           On this date, I served a copy of the following documents on the parties in this action as
6     follows:

7          **MOTION TO COMPEL DISCOVERY**

8     []       BY UNITED STATES MAIL.  By placing a true copy of the above-referenced document(s)
9     in the United States Mail in a sealed envelope with postage prepaid to the addressee(s) listed below.

10                              MOLLY M. REZAC
           OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
11                              543 Plumas Street
                                RENO, NV 89509
12

13    [ ]      BY FACSIMILE TRANSMISSION.  By transmitting a true copy of the document(s) by
14    facsimile transmission from facsimile number (775) 337 0323 to the interested parties in this action
      at the facsimile number(s) shown below.

15    [ ]      BY HAND-DELIVERY.  By delivering a true copy enclosed in a sealed envelope to the
16    address(es) shown below.

17    [x ]     BY ELECTRONIC SERVICE.  By electronically mailing a true copy of the document(s) to
18    defendants at the following email addresses via the Court's electronic filing procedure:

19                         molly.rezac@ogletreedeakins.com

20         I declare under penalty of perjury that the foregoing is true and correct.

21
           DATED: this 28 day of _April_____, 2016
22

23
                                   /s/ Terri Keyser-Cooper
24                                 TERRI KEYSER-COOPER

25

26

27

28
                                                              15